IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DANNY THACKER,<br><br>Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION,<br><br>Defendant. | Civil Action No.<br>_______________<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

COMES NOW, Danny Thacker ("Plaintiff" or "Mr. Thacker"), by and through his undersigned counsel, and files this, his Complaint, and shows the Court as follows:

## NATURE OF COMPLAINT

1.

Plaintiff brings this action for damages and reasonable attorney fees against Defendant Costco Wholesale Corporation ("Costco" or "Defendant") for violations of his rights under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq. ("FMLA").

2.

This action challenges Defendant's conduct in discriminating against Plaintiff on the basis of his disability, failing to engage in the interactive process and provide reasonable accommodations for his documented medical restrictions, retaliating against him for asserting his rights under the ADA, interfering with his exercise of rights under the FMLA, and retaliating against him for taking and seeking FMLA-protected leave, culminating in the termination of his employment.

## JURISDICTION AND VENUE

3.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action arises under federal law, specifically the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, et seq., and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq. This Court also has jurisdiction pursuant to 28 U.S.C. § 1343(a)(4), which provides for jurisdiction in actions to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

4.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Plaintiff was employed by Defendant in this judicial district and division, and a substantial

part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district and division.

**ADMINISTRATIVE PROCEDURES**

5.

Plaintiff has fulfilled all conditions precedent necessary to proceed with his claims under the ADA. Plaintiff filed a Charge of Discrimination against Costco with the Equal Employment Opportunity Commission ("EEOC"), which was dual-filed with the Missouri Commission on Human Rights, under Charge Number 560-2026-01357, alleging disability discrimination, failure to accommodate, and retaliation. The EEOC issued Plaintiff a Determination and Notice of Rights on August 22, 2026, and Plaintiff files this action within ninety (90) days of his receipt of that notice.

**PARTIES**

6.

Plaintiff Danny Thacker is a citizen of the United States and a resident of Barnhart, Missouri. At all relevant times, Plaintiff was employed by Defendant from on or about October 30, 2013 on a part-time basis, and was then employed on a full-time basis on or about April 12, 2014, until the termination of his employment effective by letter dated January 9, 2026.

7.

Defendant Costco Wholesale Corporation is a foreign for-profit corporation with its principal place of business in Issaquah, Washington, and at all times material hereto has conducted business within this District and Division, including through its warehouse located at 4200 Rusty Road, St. Louis, Missouri 63128 (Warehouse #368), where Plaintiff worked.

8.

During all times relevant hereto, Defendant has been an employer engaged in an industry affecting commerce and has employed more than five hundred (500) employees for each working day in each of twenty or more calendar weeks in the current and preceding calendar years.

9.

Defendant is therefore an "employer" as defined under the Americans with Disabilities Act, 42 U.S.C. § 12111(5), and a covered "employer" within the meaning of the Family and Medical Leave Act.

10.

Defendant may be served with process by delivering a copy of the summons and complaint to its registered agent for service of process in the State of Missouri,

C T Corporation System, at address 5661 Telegraph Rd Ste 4B, Saint Louis, MO 63129-4275.

## FACTUAL ALLEGATIONS

11.

Plaintiff began his employment with Costco on or about October 30, 2013 on a part-time basis, shifted his employment to full-time on or about April 12, 2014, and worked full time, most recently as a Merch Stocker at Warehouse #368 in St. Louis, Missouri.

12.

Throughout his employment, Plaintiff was a reliable and productive employee who maintained a strong attendance record and routinely worked overtime, and he consistently met or exceeded performance expectations prior to his medical leave.

13.

Prior to his initial injury, Plaintiff had a management-approved arrangement assigning him to the Hardlines department with Fridays and Saturdays off to accommodate his childcare responsibilities. This arrangement was approved by the then Assistant General Manager, Nathan Hawk.

14.

On or about August 20, 2024, Costco authorized Plaintiff to take intermittent mental-health days.

15.

On August 30, 2024, while working as a Merch Stocker and stocking produce, Plaintiff suffered a serious workplace injury, resulting in bilateral herniated discs at L4-L5 and L5-S1, along with ongoing sciatic pain and left-foot numbness.

16.

Plaintiff promptly reported his injury and took medical leave. He returned to work on or about September 21, 2024, with work restrictions documented by his physician requiring light duty and making heavy lifting, freezer work, and similar physical demands unsafe for his health and recovery.

17.

Plaintiff continued working on light duty until December 14, 2024, when Costco placed him on unpaid medical leave after denying his request for FMLA leave. Costco asserted that Plaintiff was 12.7 hours short of the hours required to qualify for FMLA leave. Plaintiff’s hours were counted incorrectly, resulting in the denial of his leave.

18.

On February 6, 2025, Plaintiff underwent back surgery to address the injury he sustained while working at Costco.

19.

Plaintiff returned to work on or about April 10, 2025, with medical documentation of his lasting restrictions, which made heavy lifting, freezer work, and strenuous physical tasks unsafe for his recovery and long-term health. Immediately upon returning, Plaintiff requested permanent accommodations so that he could transition into a role sustainable for his physical limitations.

20.

When Plaintiff returned to light duty, his previously approved accommodation arrangement was abandoned by new management. The new merchandising manager, Jerimy Eaker, told Plaintiff that his Hardlines position was no longer available, an assertion that was misleading and inconsistent with Costco's practices, under which all floor employees are merchandising employees.

21.

After Plaintiff returned to work in April 2025, Costco management refused to engage in the ADA interactive process, instead treating Plaintiff's needs as short-term workers' compensation issues. Although Plaintiff documented that his medical

conditions required permanent accommodations, management continued to provide him only with short-term, temporary assignments.

22.

Despite Plaintiff's requests for light duty and his supporting documentation, Costco continued to assign him to positions and tasks that required periodic heavy lifting. As a result, on May 18, 2025, Plaintiff sustained another injury that aggravated his prior back injury.

23.

Plaintiff's new injury was not formally reported until June 1, 2025. During Plaintiff's attempt to report the new injury, Assistant General Manager Jerimy Eaker questioned Plaintiff as to why he did not see a doctor sooner, in an attempt to discredit his injury report.

24.

As Plaintiff continued to seek accommodations, management engaged in a pattern of escalating adverse actions against him, including abrupt schedule changes that disrupted a previously set schedule allowing him to work and maintain parental duties, denials of seniority-based days off that ignored his seniority, continued assignments to departments and roles that required heavy lifting and extended time

in the freezer despite his medical documentation, and disciplinary write-ups resulting from errors in management's timekeeping.

25.

On August 11, 2025, Plaintiff emailed General Manager Rob Everitt to communicate that, while his medical provider and physical therapist had cleared him for full duty, he still had symptoms affecting his ability to perform certain tasks safely, and he requested ADA accommodations that included avoiding heavy stocking, repetitive bending, and lifting heavy or awkwardly shaped items without assistance.

26.

On September 8, 2025, Plaintiff submitted permanent restrictions to Costco, to which management again responded with a temporary assignment. Management also attempted to have Plaintiff sign a document that would result in him waiving his rights as he was attempting to assert them, which he declined to do.

27.

On September 12, 2025, Costco management gave Plaintiff a letter that retroactively designated his August 30 through September 20, 2024 leave as FMLA leave.

28.

Costco management scheduled an accommodation meeting with Plaintiff for October 9, 2025, but moved the meeting up to October 1, 2025, on short notice. As a result of the earlier meeting date, Plaintiff was no longer able to reach eligibility for FMLA leave.

29.

At the October 1, 2025 meeting, Plaintiff was told that he was no longer allowed to remain in his stocker role, but that there were no other roles that would fit within his work restrictions. Management then unilaterally placed Plaintiff on an unpaid leave of absence, which began on October 2, 2025, while sending him job postings he could apply for in order to be reassigned.

30.

At the time Plaintiff was placed on unpaid leave, he was 26.4 hours short of becoming eligible for FMLA leave, a threshold he would have reached on or about October 4, 2025, had the meeting not been moved from October 9 to October 1. As a result, Plaintiff lost access to health insurance and other benefits that would have been protected by FMLA leave.

31.

After he was placed on leave, Plaintiff received weekly job packets from management and regularly expressed interest in more than two dozen positions available within the greater St. Louis area. Plaintiff was repeatedly denied those positions when he applied, and the leave department repeatedly failed to log his expressed interest in open positions, even when he followed up in writing.

32.

On October 31, 2025, Costco sent Plaintiff a single, non-negotiable position offer as a full-time Food Service Assistant at the University City store location, with a schedule of primarily night and weekend shifts. Plaintiff had repeatedly communicated his need for a consistent schedule that would allow him to manage his parental duties, physical and mental health appointments, and school.

33.

The Food Service Assistant offer was structured to be rejected due to its location and increased commute, its status as the only role for which management expressly agreed to provide accommodation, and its irregular shifts, which conflicted with Plaintiff's known scheduling needs. After the offer was made, the open positions in the weekly job packets were revoked from Plaintiff.

34.

Plaintiff repeatedly requested information about the Food Service Assistant role, including information regarding cold-environment exposure, lifting and push/pull expectations, and scheduling expectations, so that he and his physician could evaluate whether the role fit his medical restrictions. Costco management refused to provide the requested information and enforced a November 10, 2025 deadline for Plaintiff to accept or reject the offer.

35.

Costco then requested a December 3, 2025 meeting to discuss the role, nearly two weeks after its self-imposed November 10, 2025 deadline. On December 3, 2025, Plaintiff emailed General Manager Rob Everitt to explain that, while he wanted to attend, management had still not provided the individualized information he needed to review the role with his physician. Plaintiff did not attend the December 3, 2025 meeting because Costco refused to provide the necessary information beforehand.

36.

On December 5, 2025, Costco emailed Plaintiff that he had until December 10, 2025 to accept the Food Service Assistant position or Costco would consider a rejection of the position to be a conclusion of the interactive process.

37.

On December 7, 2025, Plaintiff responded with a detailed email outlining Costco's confusing and conflicting communications and continuing to express his interest in the Food Service Assistant role as well as other roles that could accommodate his medical needs while allowing him to maintain his parental duties and avoid an extensive commute.

38.

Plaintiff emailed Costco management multiple times after December 7, 2025, requesting the application of paid time off and clarification regarding the next steps in the interactive accommodation process. After emailing on January 5, 2026 and receiving no response, Plaintiff followed up with a further written request for guidance and engagement.

39.

Costco did not respond to Plaintiff's emails and instead sent him a termination letter dated January 9, 2026, which Plaintiff received on January 13, 2026. Plaintiff formally objected to the termination in an email on January 13, 2026.

40.

Costco's handling of Plaintiff's accommodation requests stood in sharp contrast to its treatment of other employees. Coworkers with medical conditions,

including an employee with scoliosis and an employee with Achilles issues, as well as pregnant employees, were accommodated with lighter or modified duties, even where such duties were contrary to the formal job description. When Plaintiff engaged in protected activity by requesting accommodations, however, his requests were delayed, denied, or ignored, and human resources representatives eventually stopped responding to his correspondence altogether.

41.

As a direct and proximate result of Defendant's conduct, Plaintiff has suffered significant economic and non-economic harm, including lost wages, loss of health insurance and other benefits, and lost future employment opportunities. Plaintiff has also suffered substantial emotional distress and anxiety that have exacerbated his medical conditions and necessitated increased psychiatric support and medication, as well as the loss of a long-held position that was a significant part of his identity and professional purpose.

## CLAIMS FOR RELIEF

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

42.

Plaintiff re-alleges and incorporates paragraphs 11 through 41 as if fully set forth herein.

43.

Plaintiff has documented medical conditions, including diagnosed mental health conditions such as ADHD, anxiety, and depression, as well as a bilateral herniated discs at L4-L5 and L5-S1 that were sustained during employment, which substantially limit one or more major life activities and qualify as a disability within the meaning of the ADA, 42 U.S.C. § 12102(1).

44.

Plaintiff was a qualified individual who was able to perform the essential functions of his job with or without reasonable accommodation, as evidenced by his years of service and his consistent work performance prior to his medical leave.

45.

Defendant took adverse employment actions against Plaintiff because of his disability, including, but not limited to, assigning him to roles that exceeded his documented restrictions, placing him on involuntary unpaid leave, denying him available positions, and terminating his employment.

46.

Although Defendant purports to have had legitimate, non-discriminatory reasons for its actions, those reasons are pretextual. While Defendant claimed to offer Plaintiff multiple roles, it only offered opportunities that it knew or should have known that Plaintiff would be unable to accept due to the increased commute distance, known parental duties, and physician prescribed physical restrictions on Plaintiff's work.

47.

Defendant’s conduct constitutes unlawful discrimination on the basis of disability in violation of the ADA, 42 U.S.C. § 12112(a).

48.

As a direct and proximate result of Defendant’s unlawful conduct, Plaintiff has suffered damages, including lost wages and benefits, emotional distress and mental anguish, and other financial losses.

49.

Defendant’s actions were undertaken with malice or with reckless indifference to Plaintiff’s federally protected rights, thereby entitling Plaintiff to punitive damages.

**COUNT II: FAILURE TO ACCOMMODATE IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

50.

Plaintiff re-alleges and incorporates paragraphs 11 through 41 as if fully set forth herein.

51.

Plaintiff is a qualified individual with a disability within the meaning of the ADA who was able to perform the essential functions of a position with reasonable accommodation.

52.

Plaintiff requested reasonable accommodations for his disability, including permanent restrictions that would avoid heavy lifting, extended exposure to the freezer, and lifting awkward or misshapen items without assistance, and he provided supporting medical documentation of his permanent restrictions.

53.

Defendant failed to engage in the good-faith interactive process required by the ADA. After Plaintiff's first back surgery, Defendant assigned Plaintiff to positions that required periodic heavy lifting even though Plaintiff's physician documented his restrictions and need for long-term light duty. This resulting in additional back injuries to Plaintiff. Defendant ignored or provided shifting

responses to Plaintiff's requests, refused to provide individualized information about available positions and their essential functions, offered only short-term and temporary assignments rather than the permanent accommodation Plaintiff's conditions required, and refused to provide the individualized information Plaintiff and his physician needed to evaluate the proposed reassignment.

54.

Reasonable accommodations were available that would have allowed Plaintiff to continue working, and accommodating Plaintiff would not have imposed an undue hardship on Defendant.

55.

Defendant's failure to engage in the interactive process and to provide Plaintiff with a reasonable accommodation constitutes a violation of the ADA, 42 U.S.C. § 12112(a) and (b)(5)(A).

56.

As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages, including lost wages and benefits, emotional distress and mental anguish, and other financial losses.

57.

Defendant's actions were undertaken with malice or with reckless indifference to Plaintiff's federally protected rights, thereby entitling Plaintiff to punitive damages.

## COUNT III: RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

58.

Plaintiff re-alleges and incorporates paragraphs 11 through 41 as if fully set forth herein.

59.

Plaintiff engaged in statutorily protected activity under the ADA, including requesting reasonable accommodations for his disability, repeatedly asserting his rights to a good-faith interactive process, and opposing Defendant's failure to accommodate his documented restrictions.

60.

Defendant took adverse employment actions against Plaintiff, including, but not limited to, assigning him to roles that exceeded his restrictions, increasing scrutiny and discipline, denying him available positions, placing him on involuntary unpaid leave, only offering positions that were unacceptable to Plaintiff due to

increased distance and scheduling conflicts with Plaintiff's parental duties, and eventually terminating his employment.

61.

A causal connection exists between Plaintiff's protected activity and the adverse actions taken against him, as demonstrated by the pattern of escalating adverse treatment that followed his requests for accommodation and the close temporal proximity between his assertion of his rights and the adverse actions, including his termination.

62.

Although Defendant purports to have had legitimate, non-discriminatory reasons for its actions, including Plaintiff's purported refusal of the Food Service Assistant position, those reasons are pretextual.

63.

Defendant's conduct constitutes unlawful retaliation in violation of the ADA, 42 U.S.C. § 12203(a).

64.

As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages, including lost wages and benefits, emotional distress and mental anguish, and other financial losses.

65.

Defendant's actions were undertaken with malice or with reckless indifference to Plaintiff's federally protected rights, thereby entitling Plaintiff to punitive damages.

## COUNT IV: INTERFERENCE IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

66.

Plaintiff re-alleges and incorporates paragraphs 11 through 41 as if fully set forth herein.

67.

Plaintiff was an eligible employee entitled to leave under the FMLA because of a serious health condition that made him unable to perform the functions of his position.

68.

Defendant interfered with, restrained, and denied Plaintiff's exercise of his rights under the FMLA, 29 U.S.C. § 2615(a)(1). In December 2024, Defendant denied Plaintiff's request for FMLA leave by asserting that he was 12.7 hours short of eligibility, when his hours had been counted incorrectly.

69.

In the fall of 2025, as Plaintiff was on track to accrue the hours required for FMLA eligibility, Defendant moved his accommodation meeting from October 9, 2025 to October 1, 2025, on short notice, and placed him on unpaid leave beginning October 2, 2025, leaving him 26.4 hours short of the eligibility he would have reached on or about October 4, 2025.

70.

Defendant's manipulation of Plaintiff's leave and eligibility was done to avoid its responsibilities under the FMLA and to deny Plaintiff his entitlement to FMLA leave, in violation of 29 U.S.C. § 2615(a) and 29 C.F.R. § 825.220(b).

71.

As a direct and proximate result of Defendant's interference, Plaintiff lost access to health insurance and other benefits protected by the FMLA and suffered additional damages, including lost wages and benefits and emotional distress.

72.

Plaintiff is entitled to recover damages and equitable relief under the FMLA, including liquidated damages.

## COUNT V: RETALIATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

73.

Plaintiff re-alleges and incorporates paragraphs 11 through 41 as if fully set forth herein.

74.

Plaintiff engaged in activity protected by the FMLA, including requesting and taking medical leave in connection with his serious health condition and seeking additional leave to which he was entitled.

75.

Defendant took adverse employment actions against Plaintiff, including placing him on involuntary unpaid leave and terminating his employment.

76.

A causal connection exists between Plaintiff's exercise of his FMLA rights and the adverse actions taken against him, as demonstrated by the pattern of adverse treatment that followed his leave and the close temporal proximity between his assertion of his FMLA rights and the adverse actions.

77.

Defendant's conduct constitutes unlawful retaliation in violation of the FMLA, 29 U.S.C. § 2615(a)(2).

78.

As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages, including lost wages and benefits, loss of health insurance, emotional distress, and other financial losses.

79.

Plaintiff is entitled to recover damages and equitable relief under the FMLA, including liquidated damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Danny Thacker respectfully prays for judgment against Defendant as follows:

(a) A trial by jury as to all triable issues of fact;

(b) Back pay, front pay, and other compensatory damages for lost wages and benefits from the date of Defendant's unlawful conduct through the date of judgment;

(c) General damages for mental and emotional suffering caused by Defendant's unlawful conduct;

(d) Liquidated damages under the Family and Medical Leave Act;

(e) Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts in violation of Plaintiff's rights under the ADA;

(f) Declaratory relief establishing that Defendant violated Plaintiff's rights under the Americans with Disabilities Act and the Family and Medical Leave Act;

(g) Injunctive relief ordering Plaintiff's reinstatement to his former position, or front pay in lieu thereof, and prohibiting Defendant from engaging in further unlawful conduct of the type described herein;

(h) Reasonable attorney's fees and expenses of litigation pursuant to 42 U.S.C. § 12205 and the FMLA;

(i) Prejudgment and post-judgment interest at the maximum rate allowed by law;

(j) All costs of this action; and

(k) Such other and further relief as this Court deems just and proper.

Respectfully submitted this 18th day of November 2026.

**BARRETT & FARAHANY**

*s/ Alexander William Gass*

Alexander William Gass
Missouri Bar Number: 72810

2921 Piedmont Road, NE
Atlanta, GA 30305
(404) 214-0120
agass@justiceatwork.com

*Counsel for Plaintiff Danny Thacker*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DANNY THACKER,<br><br>Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION,<br><br>Defendant. | Civil Action No. ________________<br><br>JURY TRIAL DEMANDED |

**DECLARATION AND VERIFICATION**

I, Danny Thacker, verify and declare that the facts stated in the foregoing Verified Complaint to the best of my knowledge and belief are true, and that the Complaint is not made out of levity or by collusion with the Defendant, but in sincerity and truth for the causes mentioned in the Complaint.

Dated: November 17, 2026

Danny Thacker (Nov 17, 2026 10:41:14 CST)

Danny Thacker

11/17/2026

Date